**Certiorari Denied, January 28, 2014, No. 34,490**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2014-NMCA-027**

**Filing Date: December 5, 2013**

**Docket No. 31,571**

**CARMEN ARIAS,**

> **Plaintiff/Counter-Defendant/Appellee,**

**v.**

**PHOENIX INDEMNITY
INSURANCE COMPANY,**

> **Defendant/Counter-Plaintiff/Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Ted C. Baca, District Judge**

Carter & Valle Law Firm, P.C.
Richard J. Valle
Kathryn L. Eaton
Albuquerque, NM

for Appellee

The Law Offices of Bruce S. McDonald
Bruce S. McDonald
Daniel P. Ulibarri
Laura K. Vega
Albuquerque, NM

for Appellant

## OPINION

**KENNEDY, Chief Judge.**

**{1}** "The term 'stacking' refers to an insured's attempt to recover damages in aggregate

under . . . one policy covering more than one vehicle." *State Farm Mut. Auto. Ins. Co. v. Safeco Ins. Co.*, 2013-NMSC-006, ¶ 8, 298 P.3d 452 (internal quotation marks and citation omitted). Plaintiff attempts to impose intra-policy stacking of uninsured/underinsured motorist (UM/UIM) coverage into an insurance policy we previously reformed, owing to the imperfect handling of her rejection of UM/UIM coverage. *See Arias v. Phoenix Indem. Ins. Co.*, 2009-NMCA-100, 147 N.M. 14, 216 P.3d 264. In *Arias*, we held that her rejection of UM/UIM coverage was legally deficient and required judicial intervention to read the coverage into the policy. *Id.* ¶ 18. On similar grounds, we hold that she is also entitled to have her coverage stacked under our Supreme Court's opinion in *Montano v. Allstate Indem. Co.*, 2004-NMSC-020, 135 N.M. 681, 92 P.3d 1255. We affirm the district court and remand.

## I. BACKGROUND

**{2}** Carmen Arias (Plaintiff), having settled for policy limits with the insurance company of a tortfeasor whose vehicle struck hers, attempted to pursue UM/UIM benefits under an insurance policy that she had purchased from Phoenix Indemnity Insurance Company (Defendant). This policy covered her liability up to the statutory minimum and covered two vehicles but, at the time of its purchase, she rejected UM/UIM coverage. In a previous appeal in this case, we held that, because her rejection of UM/UIM coverage was legally invalid, she was entitled to UM/UIM coverage as a matter of law. *See Arias*, 2009-NMCA-100, ¶ 12. The issue of whether the coverage "stacked" because two vehicles were covered under the policy had not been addressed by the district court, and we remanded with instructions to consider and rule on the stacking issue. *Id.* ¶ 19.

**{3}** On remand, the district court resolved the stacking issue on summary judgment. Plaintiff's judicially minted UM/UIM coverage would apply to her damages, and the coverage would be stacked, reflecting the two vehicles covered under the policy. In doing so, the district court first determined that reasonable expectations of an insured in the terms of a policy are irrelevant once it was determined by this Court that Defendant had failed to obtain a valid rejection of UM/UIM coverage from Plaintiff. Second, interpreting the arc of New Mexico's common law holdings that read UM/UIM coverage into a policy in amounts equal to the full extent of its liability limits, the district court determined that, in the absence of any valid rejection of UM/UIM coverage in a multiple-vehicle policy, the full coverage due is properly established by multiplying the available liability limits of the policy by the number of vehicles insured, rather than the number of premiums paid by an insured. The district court stated that UM/UIM coverage had been read into the policy as a result of Defendant entirely failing to obtain a valid rejection of coverage, and the reformation of the policy should include reading in stacking as well. From this judgment, Defendant now appeals. We agree with the district court.

## II. DISCUSSION

**{4}** The facts of this case are not in issue and were discussed fully in our previous

2

opinion. The question is solely one involving interpretations of law, which we review de novo. *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 14, 149 N.M. 162, 245 P.3d 1214; *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146 (holding that, in such a situation, we apply de novo review and are not required to view the appeal in the light most favorable to the party opposing summary judgment).

**{5}**    In *Romero v. Dairyland Insurance Co.*, our Supreme Court observed that unless rejection is accomplished in a manner consistent with the requirements imposed by the statute and regulations, UM/UIM coverage will be read into the policy "regardless of the intent of the parties." 1990-NMSC-111, ¶ 1, 111 N.M. 154, 803 P.2d 243. Our Supreme Court further stated that the UM/UIM statute "embodies a public policy of New Mexico to make uninsured motorist coverage a part of every automobile liability insurance policy issued in this state," and "[t]he statute was intended to expand insurance coverage and to protect individual members of the public against the hazard of culpable uninsured motorists." *Id.* ¶ 6. Finally, our Supreme Court stated that the statute should be liberally interpreted in order to implement its remedial purpose, and the language in the statute that provides for an exception to UM/UIM coverage should be construed strictly to protect the insured. *Id.*; *Farmers Ins. Co. of Ariz. v. Chen*, 2010-NMCA-031, ¶ 25, 148 N.M. 151, 231 P.3d 607.

**{6}**    Our courts have a continuing interest in implementing the legislative goal to direct New Mexicans to insure for damages caused by uninsured and underinsured motorists. In *Arias*, we followed *Romero* to implement the strong expansive legislative and public policy in New Mexico favoring insurance coverage to protect members of the public against losses caused by uninsured and underinsured motorists. *Arias*, 2009-NMCA-100, ¶ 7. We recognize that the Legislature enacted NMSA 1978, Section 66-5-301(A) and (C) (1983) to provide that every insurance policy in the state is to include UM coverage and, if the insured does not want the coverage, it should be specifically rejected in writing. *Marckstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, ¶¶ 16-17, 25-26, 147 N.M. 678, 228 P.3d 462 (expressing the written rejection and attached notification requirements). Under our law, the insurer offers the maximum amount of UM/UIM coverage to the insured based on the liability limits of the policy and, in no event, less than the statutory minimum. *Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 2010-NMSC-050, ¶ 12, 149 N.M. 157, 245 P.3d 1209; *Romero v. Progressive Nw. Ins. Co.*, 2010-NMCA-024, ¶ 16, 148 N.M. 97, 230 P.3d 844. Such coverage may only be foregone by an insured's express and legally satisfactory rejection of it.

**{7}**    The history of our case law considering the offer and rejection of UM/UIM coverage is extensive. *See Weed Warrior*, 2010-NMSC-050, ¶ 4 (listing cases that constitute the evolution of jurisprudence in this area). The default position of our courts is that any rejection of coverage that is found to be invalid under Section 66-5-301 results in courts reforming the insurance policy in question by reading into it UM/UIM coverage as if it was fully provided at the level of policy limits to the insured in the first instance. *Romero*, 2010-NMCA-024, ¶ 16; *see Jordan*, 2010-NMSC-051, ¶ 2. "Where a valid rejection of UM/UIM

3

coverage has not been obtained by the insurer, New Mexico law requires UM/UIM coverage to be read into the policy at the liability limits, regardless of the intent of the parties or the fact that a premium has not been paid." *Chen*, 2010-NMCA-031, ¶ 27 (noting that the de-emphasis on premium payment becomes significant when dealing with an invalid rejection of both coverage and stacking).

**{8}** We have already reformed Plaintiff's insurance contract to include UM/UIM coverage to the liability limits of her policy because Section 66-5-301 and 13.12.3.9 NMAC (5/14/2004) provide that automobile liability policies shall contain UM/UIM coverage in the absence of an appropriate rejection. *Arias*, 2009-NMCA-100, ¶ 15. Now that the district court on remand has separately considered whether Plaintiff's two insured vehicles' coverage should be stacked, we review this remaining question.

**A.** **Insufficient Rejections of Coverage Result in Reading in UM/UIM Coverage to Policy Limits**

**{9}** There is no question that, in the absence of a valid rejection of UM/UIM coverage, such coverage will be read into the insured's coverage as if there was no rejection at all. That is the law of the case here. *Id.* ¶ 12. The invalid rejection of partial UM/UIM stacking, or the ambiguous subjecting of a policy to a limitation on stacking, was similarly held in *Montano* to be no rejection at all, resulting in stacking to the policy limits for each covered vehicle being read into the policy. The question here is simply whether a complete reading of UM/UIM coverage where none had been before also requires the reading in of stacking of coverage if multiple vehicles are insured.

**{10}** Plaintiff insured two vehicles under her policy. By our earlier decision in *Arias*, she is entitled to UM/UIM coverage to the limits of her liability under the policy irrespective of her intention to reject coverage or whether separate premiums were paid. *Chen*, 2010-NMCA-031, ¶ 27. To begin answering the question of whether stacking applies here, we will first assess the circumstances under which common law imposition of stacking upon insurance policies has occurred.

**B.** **Stacking in New Mexico**

**{11}** *Montano* holds that insurers must obtain written rejections of stacking to avoid liability. 2004-NMSC-020, ¶ 1. UM/UIM coverage as required by statute is a mandatory component of an insurance policy. In *Montano*, the policy provided for some, but not all, covered vehicles' coverage to be stacked. As a result, our Supreme Court's pronouncements in *Montano* treated the stacking issue as a "judicially-created doctrine, which thus far has not met the disapproval of the Legislature[,]" *id.* ¶ 17, but also something that had been predicated on the insured's payment of "a separate premium for the uninsured motorist coverage on each car insured under the policy[,]" *id.* ¶ 12 (internal quotation marks and citation omitted). Given that the *Montano* policy had stacked coverage subject to a separate premium, this language does not apply well to our case, where all UM/UIM coverage was

4

judicially created. In the present case, there was a single policy, but no premium paid at all for UM/UIM coverage owing to our reading it into the policy. Following *Montano*, our Supreme Court was providing UM/UIM coverage up to liability limits, they were silent on whether this judicially created coverage was to be stacked. *Jordan*, 2010-NMSC-051. We first conclude that the rationale expressed in *Chen* that payment of any premium is irrelevant to our reading coverage into a policy in general should be extended to the question of stacking where the policy itself was silent, but coverage is read in the contract by the courts.

**{12}** Despite *Montano*'s discussion of stacking as "extra coverage for which the parties have contracted," it is clear that, absent the execution of a sufficient rejection of each and every possible combination of stacking, stacking is something "to which the insured is entitled by default[.]" 2004-NMSC-020, ¶ 18 (internal quotation marks and citation omitted). Defendant's attempts to rely on *Montano* to limit stacking only to where "those who want stacked coverage pay for it, and those who don't want it don't pay for it" is inapposite. *Id.* (internal quotation marks and citation omitted). Separate premiums are extraneous to *Montano*'s strong dicta indicating a preference for policies to treat vehicles individually and, hence, requiring a policyholder's specific rejection of stacked coverage for each and every vehicle owned before stacking is validly rejected. *Id.* ¶ 19. *Montano* dealt with a policy that specifically sought to limit stacking by its terms, but wound up having those limitations struck down and full per-vehicle stacking imposed on the policy when an ambiguity resulted in an invalid rejection of stacking. In the absence of any such terms or premiums to be paid for stacking in this case, *Montano* demonstrates that, when invalid rejection of stacking exists, our courts favor and extend stacking to all vehicles covered by the policy. *See id.* ¶ 1.

**{13}** This returns us to the expansive policy perspective of the Legislature as to this issue and our common law that no liability policy may issue, except that it provides "*any* vehicle registered or . . . garaged in New Mexico" is to be covered by UM coverage. *Id.* ¶ 19; § 66-5-301(A). Stacking must then be a default entitlement with regard to all individual vehicles covered under a policy where no sufficient rejection of stacking exists. Although *Montano* indicates the possible propriety of a stacking exclusion when under a policy only a single premium is paid and a specific rejection is properly executed, that is not the case here. *Montano* clearly requires an unambiguous rejection to defeat stacking as well and, in this case, we have neither a rejection of coverage or stacking as a matter of law. The lack of a valid rejection of UM/UIM coverage in this case led us to read coverage into the insurance contract. It appears we must now do the same with stacking of coverage as it would apply to each covered vehicle. The judicial imposition of stacking, like imposing coverage when an insured did not validly reject it, must inure exclusively to the benefit of the insured as a default position. *Montano*, 2004-NMSC-020, ¶ 19 (stating that the statute required each vehicle covered under a policy be covered by one minimum coverage, together with the requirement of written rejection of UM/UIM coverage combine to defeat an insurance company's attempt to limit liability by avoiding stacking). Unless a policy "notif[ies] the insured that only one premium has been charged for one insurance coverage[,]" full stacking is read into the policy. *Id.* ¶ 27 (internal quotation marks and citation omitted). Where

5

courts confer UM/UIM coverage where a policy is silent on the matter, it follows that each vehicle covered also acquires coverage, and those coverages are to be stacked.

{14}    Our opinion in *Arias* left the stacking issue open as to the coverage we imposed on the insurance contract between the parties.  We acknowledge that, by creating the coverage without reference to stacking, we created a legal ambiguity as to the extent of that coverage that also has implications for the question of whether to order stacking.  "A court may find that an ambiguity exists if separate sections of the policy conflict, if the language may have more than one meaning, if the structure of the contract is not logical, or if a relevant matter of coverage is not explicitly addressed in the policy." *Bird v. State Farm Mut. Auto. Ins. Co.*, 2007-NMCA-088, ¶ 11, 142 N.M. 346, 165 P.3d 343.  *Bird* held that, in the absence of such terms, coverage is to be read into the policy by our courts.  We hold that, as much as coverage itself to the maximum limit of liability must be read into her policy, stacking of coverage for each of the two vehicles thus insured must now follow suit absent valid rejection, and we affirm the district court.

## C.    Failing to Adequately Reject Stacking Results in the Imposition of Stacking

{15}    Thus, we conclude that as we inject UM/UIM coverage into a policy as a matter of law for failure of any rejection of coverage, the law also requires the imposition of a per-vehicle stacking of coverage into a single policy.  In this case, ambiguities arose in Arias's policy's language, owing first to the defective rejection of coverage requiring that coverage be read into the policy.  Second, the requirement noted above that coverage applies to *any* vehicle demands stacking of coverage in the absence of indications to the contrary.  Having extended to her the availability of UM/UIM coverage as a matter of law, we also include per-vehicle stacking.  We believe that, in the absence of a rejection of coverage altogether, the coverage that must be extended is the full measure accorded her by the default positions afforded by law.  This includes UM/UIM coverage generally, specifically to be stacked as to each of her insured vehicles.

## III.    CONCLUSION

{16}    We hold that the district court was correct as a matter of law and affirm its grant of summary judgment to Plaintiff and remand for resumption of proceedings in accordance with our ruling today.

{17}    **IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Chief Judge**

**WE CONCUR:**

_____

6

**JONATHAN B. SUTIN, Judge**

_____

**J. MILES HANISEE, Judge**

**Topic Index for** _Arias v. Phoenix Indem. Ins. Co._**, No. 31,571**

**APPEAL AND ERROR**
Standard of Review

**INSURANCE**
Stacking
Uninsured or Underinsured Motorist